**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

PAO M.

Petitioner,

v.

TODD BLANCHE, *Attorney General*; MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director of United States Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and RYAN SHEA, *Sheriff of Freeborn County,*

Respondents.

Case No. 26-cv-3399 (LMP/DJF)

**ORDER DENYING HABEAS PETITION**

---

James S. Dugan, **Zelle LLP, Minneapolis, MN**, for Petitioner.

Worthington S. Phillips, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

Petitioner Pao M.[2] was ordered removed from the United States in 2005. But because Pao's home country of Laos refused to accept him, he was released into the community on an Order of Supervision ("OSUP") in 2006. The Government has now

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Ryan Shea, the Freeborn County Sheriff, has not participated in these proceedings.

[2] The Court uses Petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

revoked Pao's OSUP and detained him in immigration custody, because Laos has agreed to accept him back. Pao maintains that his continued detention is unlawful. The Court disagrees and therefore denies his petition.

**BACKGROUND**

Pao is a native and citizen of Laos who entered the United States as a refugee in 1988. ECF No. 1 ¶ 29; ECF No. 6 ¶ 5. He became a lawful permanent resident in 1989, ECF No. 6 ¶ 6, but after being convicted of criminal sexual conduct in 1998, was ordered removed to Laos in March 2005, *id.* ¶¶ 7–9. On March 3, 2005, ICE issued an I-205 administrative warrant for his arrest, and he was taken into custody. *Id.* ¶¶ 10, 12; ECF No. 6-3. However, Pao's removal to Laos did not occur, likely because Laos historically did not accept the return of its nationals ordered removed from the United States. *See* ECF No. 1 ¶ 31. Accordingly, on July 10, 2006, the Government released Pao into the community on an OSUP. *Id.*; ECF No. 6-4. As part of his OSUP conditions, Pao was required to remain law-abiding, assist the Government in obtaining travel documents, and report for in-person check-ins. ECF No. 6-4 at 1–2.

After being released, Pao routinely appeared at his check-ins and has remained law-abiding. ECF No. 1 ¶ 32; ECF No. 6-6 at 2. But on June 5, 2026, the Government secured a travel document for Pao from Laos. ECF No. 6 ¶ 11. As a result, when Pao appeared at a regularly scheduled check-in on July 15, 2026, the Government took him into custody. *Id.* ¶ 13; ECF No. 1 ¶ 32. The Government did not serve him with an I-200 or I-205 administrative warrant for his arrest. ECF No. 1 ¶ 33. That same day, ICE issued a notice revoking Pao's OSUP because it had obtained a travel document for his return to Laos.

ECF No. 6-5 at 1. The Proof of Service section of the notice indicates that it was served on Pao on July 15, 2026. *Id.* at 2. On the same day, ICE officers conducted an informal interview of Pao; he declined to make a statement. *Id.* at 3. Pao remains detained at the Freeborn County Jail in Albert Lea, Minnesota. ECF No. 1 ¶ 1. The Government states that Pao is manifested on a return flight to Laos on or before September 5, 2026. ECF No. 6 ¶ 15.

On July 23, 2026, Pao filed a petition for a writ of habeas corpus, alleging that his detention is unlawful. ECF No. 1. Pao's petition centers around two core claims: (1) that he was arrested without a valid warrant and contrary to federal statutes governing warrantless arrests, *see id.* ¶¶ 57–68; and (2) that the Government unlawfully revoked his OSUP, *see id.* ¶¶ 69–100. The Court ordered the Government to respond to Pao's petition no later than July 31, 2026, with any reply from Pao due by August 7, 2026. ECF No. 4. Both the Government and Pao timely provided that briefing. ECF Nos. 5, 7.

**ANALYSIS**

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

## I. Warrantless Arrest Claim

Pao first asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. ECF No. 1 ¶¶ 57–68. "As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to "exercise discretion to issue a warrant for a [noncitizen]'s arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.* at 408, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest," 8 U.S.C. § 1357(a)(2).

Here, the Government argues that it had a warrant for Pao's arrest, pointing to the I-205 administrative warrant it issued in 2005. ECF No. 5 at 15–16. An I-205 warrant of removal is issued to detain someone subject to a final order of removal. *See* 8 C.F.R. §§ 241.2, 241.3(a); *see also Ger V. v. Mullin*, No. 26-cv-2543 (KMM/DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026). Pao argues that the I-205 warrant is no longer valid because it was executed in 2005, when Pao was taken into immigration custody immediately after he was ordered removed. ECF No. 7 at 3–6. Pao's argument—that an I-205 warrant is no longer valid when it has been used to take a noncitizen into custody, albeit without final removal—has support in this District's case law. *See Ahmed S. v.*

*Blanche*, No. 26-cv-2265 (KMM/DLM), 2026 WL 1998718, at *5 (D. Minn. July 10, 2026); *Wilson P. v. Blanche*, No. 26-cv-3448 (JMB/SGE), 2026 WL 2294612, at *5 (D. Minn. Aug. 10, 2026). On careful reflection, however, the Court must respectfully part ways with the approach adopted by its colleagues.

No statute or regulation speaks to the expiration date of an I-205 warrant of removal. And case law in the immigration context is scant. But some familiar baseline principles of criminal procedure are instructive. A warrant is no longer effective when it has been executed. *See, e.g.*, *Peña–Borrero v. Estremeda*, 365 F.3d 7, 13 (1st Cir. 2004) (explaining that an already executed arrest warrant "was no longer effective"); *United States v. Keszthelyi*, 308 F.3d 557, 571 (6th Cir. 2002) ("Once the execution of a warrant is complete, [] the authority conferred by the warrant terminates."); *United States v. Gagnon,* 635 F.2d 766, 769 (10th Cir. 1980) (explaining that "once a search warrant has been fully executed and the fruits of the search secured, the authority under the warrant expires and further governmental intrusion must cease"); *State v. Trujillo*, 624 P.2d 44, 48 (N.M. 1981) (collecting cases holding that "a warrant is executed when a search is conducted, and its legal validity expires upon execution"). That begs the question, though: when is a warrant "executed"? Although articulated in various ways, a warrant is "executed" when its purpose has been fulfilled. *See Wilson v. Layne*, 526 U.S. 603, 611 (1998) ("[T]he Fourth Amendment does require that police actions in execution of a warrant be related to the objectives of the authorized intrusion."); *see also* Wayne R. LaFave, 2 Search & Seizure § 4.10(d) (6th ed. 2025) ("When the purposes of the warrant have been carried out, the authority to search is at an end.").

So, answering whether Pao's I-205 warrant was previously "executed" requires evaluating whether the purposes of that warrant had been fulfilled. As the name suggests, the purpose of a "warrant of removal" is to effectuate and document the noncitizen's removal from the United States. *See* 8 C.F.R. § 241.2; *see, e.g.*, *United States v. Torres–Villalobos*, 487 F.3d 607, 613 (8th Cir. 2007) (explaining that the "primary purpose" of a warrant of removal "is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation"); *United States v. Burgos*, 539 F.3d 641, 645 (7th Cir. 2008) (stating that the I-205's "primary purpose is to memorialize the deportation"); *United States v. Becerra–Valadez*, 448 F. App'x 457, 462 (5th Cir. 2011) (explaining that the I-205 is produced "to memorialize an alien's departure from the United States"). Of course, an I-205 warrant also authorizes an immigration official to arrest a noncitizen ordered removed. *See* 8 C.F.R. § 241.3(a) (explaining that a noncitizen ordered removed "will be taken into custody pursuant to the warrant of removal"). But its "primary purpose" is not fulfilled until it "memorialize[s]" the noncitizen's removal. *Burgos*, 539 F.3d at 645.

That conclusion accords with the I-205 warrant itself. The first page of the warrant explains that a noncitizen "is subject to removal/deportation from the United States," and provides the factual basis for that statement. ECF No. 6-3 at 1. The second page of the I-205, however, is to "be completed by [an immigration] officer *executing* the warrant." *Id.* at 2 (emphasis added). And, notably, the information that the immigration officer executing the warrant must fill out relates to the noncitizen's removal from the United States. *Id.* (requiring information such as "name of [the noncitizen] being removed," "port,

date, and manner of removal," and who witnessed and verified the "departure" of the noncitizen). All of this suggests that the I-205 warrant is executed when removal is complete.

Agency guidance also confirms this understanding of the I-205. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (citation omitted) (explaining that courts may draw on an agency's "body of experience and informed judgment" when interpreting a statute). ICE's Detention and Removal Operations Policy and Procedure Manual ("Manual")[3] explains that once a warrant of removal is issued, "it remains valid until executed or canceled." Manual at 74. And to put a finer point on it, the Manual equates "execution" of the I-205 warrant as occurring "[a]t the time of the [noncitizen]'s physical removal." *Id.* at 75. The purpose of the I-205 warrant, coupled with agency practice and understanding, all lead to the same conclusion: an I-205 warrant of removal remains effective if the subject of the warrant is arrested but not removed from the country.

Applying that rule here disposes of Pao's warrantless arrest claim. It is undisputed that Pao was arrested, but never removed, on the 2005 I-205 warrant of removal. ECF No. 7 at 3–6; *see* ECF No. 6 ¶¶ 10–13. The I-205 warrant of removal from 2005, therefore,

---

[3] The Manual may be found at https://www.aila.org/library/ice-detention-deportation-officers-field-manual [https://perma.cc/8YRG-TM3S]. This Manual was last released by ICE in 2006, *see* Manual at 1, but it has continued to be cited in judicial decisions, including by members of the Supreme Court in 2020, *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 61 (2020) (Thomas, J., concurring in part and dissenting in part). And even if the most recently released version of the Manual has been amended in relevant part since 2006, the 2006 version of the Manual nonetheless offers a window into how ICE itself contemplates execution of a warrant of removal.

remains valid. Because the Government had a valid "administrative warrant in hand at the time of [Pao's] arrest," his arrest was lawful. *Abdifatah M. A. v. Blanche*, No. 26-cv-3475 (LMP/DLM), 2026 WL 2410402, at *1 (D. Minn. Aug. 18, 2026).

## II. OSUP Revocation Claim

Federal regulations require ICE to release a noncitizen ordered removed from the United States on an OSUP if there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also* *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized" by statute.). Once ICE releases a noncitizen on an OSUP, ICE's ability to re-detain that noncitizen is constrained by its own regulations. Relevant here, an OSUP may be revoked, and the noncitizen may be re-detained, in two circumstances: (1) if the noncitizen violates the OSUP's conditions; or (2) if circumstances change such that ICE determines the noncitizen's removal is significantly likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1)–(2). In either case—an OSUP violation or changed circumstances—ICE must notify the noncitizen "[u]pon revocation" of the "reasons for revocation of his or her release" and "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). As part of that informal interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the

reasonably foreseeable future, or that he or she has not violated" the OSUP's conditions. *Id.*

The record reflects that the Government complied with this governing framework. The "changed circumstance" here is the Government's receipt of a travel document for Pao from Laos, *see* ECF No. 6 ¶ 11, which undoubtedly makes Pao's removal "significantly likely in the reasonably foreseeable future," *see Chay T. v. Mullin*, No. 26-cv-2908 (LMP/ECW), 2026 WL 1870619, at *2 (D. Minn. June 30, 2026). To the extent that Pao argues that the Government has never procured Laotian travel documents, *see* ECF No. 7 at 13–14, he offers nothing but conjecture to support that argument, which is insufficient to meet his burden to receive habeas relief, *see Jose J. O. E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025) ("The burden is on the petitioner to prove illegal detention by a preponderance of the evidence."); *cf. Berchie v. Bondi*, No. 25-cv-3197 (KMM/SGE), 2025 WL 4943114, at *2 (D. Minn. Nov. 4, 2025) (denying petitioner's request for evidentiary hearing "based on nothing more than [petitioner's] belief that something fishy occurred" without "any evidence whatsoever to support his conjecture").

On the day that he was arrested, which was during his scheduled check-in, the Government served a notice of revocation on Pao explaining that his OSUP was being revoked because the Government had procured a Laotian travel document for him. ECF No. 6 ¶ 13; ECF No. 6-5 at 1–2. That same day, Pao was afforded an informal interview at which he declined to make a statement. ECF No. 6-5 at 3. Pao suggests that the informal interview was conducted before he received the notice of revocation, ECF No. 7 at 9–13,

but he offers no evidence that this occurred, which, again, does not meet his burden to receive habeas relief,[4] *see Jose J. O. E.*, 797 F. Supp. 3d at 965.

Because the Government lawfully revoked Pao's OSUP, he is not entitled to habeas relief on his claims challenging the legality of his OSUP revocation.

## CONCLUSION

For these reasons, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Pao's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**;

2. This action is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 21, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

[4] Contrary to Pao's assertion, this Court's decision in *Vu V. L. v. Mullin* is not "precisely applicable" here. *See* No. 26-cv-2947 (LMP/JFD), 2026 WL 1893611 (D. Minn. July 1, 2026). In *Vu V. L.*, the record was clear that the notice of revocation was served after the informal interview. *See id.* at *1 (explaining that the proof of service section of the notice of revocation stated that it was served on May 13, 2026, but the record of the informal interview stated that the interview occurred on May 12, 2026). The record is not so clear here.